FILED

2014 May-19  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

CHALANDA CABBIL, et al.,          )
                                  )
        Plaintiffs;               )
                                  )
   vs.                            )          7:13-cv-01621-LSC
                                  )
KEVIN MCKENZIE, et al.,           )
                                  )
        Defendants.               )

MEMORANDUM OF OPINION

This action, brought under 42 U.S.C. § 1983 ("§ 1983"), involves allegations of constitutional violations against various members of the West Alabama Narcotics Task Force ("WANTF"). The Defendants have filed two motions to dismiss this action (Docs. 6, 8), and for the reasons discussed below, the motions are due to be granted.

## I.    BACKGROUND[1]

Defendants   Kevin   McKenzie   ("McKenzie"),   Wayne   Robertson

---

[1] For purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court treats facts alleged in the complaint as true and construes them in the Plaintiffs' favor. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). Plaintiffs also attached a search warrant application to their complaint, which is treated as part of the complaint. *Id.* at 1215–16.

("Robertson"), Jeff Snyder ("Snyder"), and Bobby Windham ("Windham") are police officers employed by the City of Tuscaloosa. Defendant John Brown ("Brown") is a police officer employed by the University of Alabama. All of the Defendants are members of the WANTF, which investigates drug-related offenses.

On September 1, 2011, McKenzie sought a search warrant for various properties, stemming from his investigation of Demetrius Quarles ("Quarles"), a suspected drug dealer. In order to apply for a search warrant, McKenzie provided an affidavit describing Quarles's operation and the various places to be searched. One of the listed locations was a Tuscaloosa, Alabama, residence where Plaintiffs Chalanda Cabbil, Earl Cabbil, and Charlotte Cabbil, reside.[2] McKenzie's affidavit described Chalanda as a "known associate" of Quarles, but it did not mention either Charlotte or Earl. Additionally, the affidavit noted that Quarles had used Chalanda's cell phone to conduct narcotics business and that WANTF officers had noticed either Quarles or Quarles's vehicle at the Cabbils' residence on several occasions. According to the affidavit, one of Quarles's vehicles had been spotted outside the residence that day.

After obtaining the search warrant, the Defendants, along with other law enforcement officers, searched the Cabbils' residence. While in the basement of the

---

[2] When the Court refers to an individual Plaintiff, it will refer to that person by his or her first name. However, it will refer to the Plaintiffs collectively as "the Cabbils."

residence, the officers claimed to find cocaine residue in a common area outside Earl's bedroom. The Cabbils alleged that the Defendants either planted the cocaine before making this statement or falsely claimed that they found cocaine when it was not there. Upon discovering the residue, McKenzie obtained arrest warrants for Chalanda and Earl on September 11, 2011, charging them with possession of a controlled substance. Chalanda was arrested on September 12, 2011, and Earl was arrested on September 13, 2011.

Although they were both arrested, neither was ultimately convicted on these charges. Earl's charge was dismissed before he was indicted, and Chalanda's charge was dismissed after a judge granted a motion to suppress the cocaine residue, finding a lack of probable cause to support the search warrant.

On August 30, 2013, the Cabbils filed suit in this Court. They contend that the Defendants' actions amounted to an unlawful entry and search of their residence and resulted in the unlawful arrests of both Chalanda and Earl. The Court also reads the complaint to attempt to allege § 1983 conspiracy claims based on both the search and the arrests. Subsequently, the Defendants moved to dismiss the action with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.[3]

## II.    STANDARD OF REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 1950 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678, 129 S. Ct. at 1949 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint.  First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S. Ct. at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell*

---

[3] All of the City of Tuscaloosa police officers joined in one of the motions to dismiss (Doc. 6), and the University of Alabama officer made the second motion to dismiss. (Doc. 8.)

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-1965 (2007).

## III.   DISCUSSION[4]

Section 1983 establishes a civil cause of action against any person who violates the constitutional rights of another while acting under color of state law. 42 U.S.C. § 1983. According to the complaint, each of the Defendants was both a police officer and a member of the WANTF, and therefore acting under color of state law when they searched the Cabbils' home and sought the arrest of Chalanda and Earl. Additionally, the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. If a plaintiff can allege sufficient facts to show that there was an unreasonable search or seizure, he has stated a constitutional injury recognized under § 1983. *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010) (arrest); *Vasquez*

---

[4] The Court acknowledges that the Defendants have filed an interlocutory appeal regarding this Court's entry of a mediation order before ruling on the qualified immunity issue. However, neither party has moved for a stay of proceedings in this Court regarding the pending motions to dismiss.

*v. Snow*, 616 F.2d 217, 219 (5th Cir. 1980) (search).[5] Finally, to state a § 1983 conspiracy claim the Plaintiffs must plead sufficient facts to suggest that the Defendants reached an understanding to deny the Plaintiffs their constitutional rights. *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990).

Here, all Defendants have raised the defense of qualified immunity. "A government official acting in the course and scope of his employment is shielded from suit against him in his individual capacity if, while performing a discretionary function, his conduct did not violate a clearly established constitutional right of which a reasonable person would have known." *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). The Court must consider the defense of qualified immunity as soon as possible in the litigation, including at the motion to dismiss stage. *See Hunter v. Bryant*, 502 U.S. 224, 233–34, 112 S. Ct. 534, 539–40 (1991) ("Because qualified immunity protects government officials from suit as well as from liability, it is essential that qualified immunity claims be resolved at the earliest possible stage of litigation."). None of the parties dispute that the Defendants were engaged in

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

discretionary law enforcement functions, and thus qualified immunity analysis applies. *See Harrell v. United States*, 875 F.2d 828, 831 (11th Cir. 1989) (noting that a coast guard officer's "actions in arresting, searching and detaining the plaintiffs" constitute the type of discretionary circumstances where qualified immunity applies).

Because the Defendants are entitled to qualified immunity analysis, the Cabbils' complaint must provide sufficient facts to suggest a violation of a *clearly established* constitutional right. *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003). The Cabbils alleged that both the search and the arrests were performed pursuant to warrants that were executed before a neutral magistrate.[6] Although it is not dispositive, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner" that would entitle them to qualified immunity in a § 1983 action based on an invalid warrant. *Messerschmidt v. Millender*, - - - U.S. - - - -, 132 S.Ct. 1235, 1245 (2012). Thus, an officer is generally entitled to qualified immunity unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1098 (1986).

---

[6] The complaint contains no facts about the magistrate who signed either warrant, and there is no suggestion that a magistrate performed anything less than a neutral role when executing either the search or arrest warrant. *See Messerschmidt v. Millender*, - - - U.S. - - - -, 132 S. Ct. 1235, 1245 (2012) (emphasizing that qualified immunity normally attaches when the warrant is issued by a neutral magistrate).

Turning first to the search warrant, the Cabbils contend that McKenzie submitted an insufficient affidavit and application to search their residence. However, "[t]o invalidate a warrant based on incorrect information provided in a supporting affidavit one must show that officers intentionally or recklessly included false information or omitted necessary true information." *Maughon v. Bibb Cnty.*, 160 F.3d 658, 660 (11th Cir. 1998). McKenzie's affidavit, which was attached to the complaint, described Quarles's drug operation in detail. It also provided the following facts about Chalanda and the Cabbils' residence generally: (1) Quarles was a "known associate" of Chalanda's; (2) Quarles had used Chalanda's cell phone to conduct narcotics business; (3) agents had observed Quarles at the Cabbils' residence on multiple occasions; and (4) officers had located one of Quarles's vehicles outside the Cabbils' residence on September 1, 2011, the date the warrant was issued. (Doc. 1 at 14.) The Cabbils have not alleged that any of these facts were actually false, much less intentionally or recklessly false, and the magistrate found those facts sufficient to establish probable cause to search the residence. *Cf. Holmes v. Kucynda*, 321 F.3d 1069, 1083–84 (11th Cir. 2003) (finding that a plaintiff could survive summary judgment on a § 1983 claim when she produced evidence of deliberate false statements).

Instead, the Cabbils attempt to suggest that McKenzie omitted important

truthful information, "including that Charlotte Cabbil had severe mental illness and was being cared for by Chalanda, that a previous search of two storage units rented by Chalanda had produced no evidence Chalanda was involved with any drug-related activities of Quarles, and plaintiffs' lack of any significant criminal history." (Doc. 1 at 4 ¶ 22.) Although the complaint also contains the conclusory statement that "[t]he individual defendants acted with malice and with reckless disregard for plaintiffs' rights," there are no facts to suggest that McKenzie intentionally or recklessly omitted this information. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (stating that a plaintiff must provide more than labels, conclusions, or threadbare recitations of the elements of a cause of action). Moreover, an omission would only make reliance on the warrant unreasonable if inclusion of the omitted facts would preclude a finding of probable cause. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997) (noting that intentional or reckless omissions invalidate a warrant when the omitted facts would have prevented a finding of probable cause had they been included in the application). Here, the omissions would not have precluded a finding of probable cause even if they had been included in the affidavit. *See United States v. Jenkins*, 901 F.2d 1075, 1079–80 (11th Cir. 1990) (finding that various omissions, including the defendant's lack of criminal history and futility of a previous

search of another area, would not have precluded a finding of probable cause to search a residence).[7]

Thus, the Cabbils have not met the high threshold for establishing that McKenzie's affidavit was so lacking in probable cause that it was unreasonable for the officers to rely upon the search warrant. *See Messerschmidt*, 132 S. Ct. at 1245. According to the complaint, Brown, Robertson, Snyder, and Windham all knew the contents of the warrant affidavit. All Defendants are entitled to qualified immunity based on the search of the Cabbils' residence.

Finally, insofar as the Cabbils have attempted to allege a § 1983 conspiracy claim based on the search, the motions to dismiss that claim are also due to be granted. In order to state a § 1983 conspiracy claim, a plaintiff would need to plead sufficient facts to suggest that an actionable wrong occurred. *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990). Since the Cabbils have not pleaded sufficient facts to support their illegal search claim, they have not pleaded sufficient facts to indicate a conspiracy based upon that search. Thus, both motions to dismiss are due to be granted as to the

---

[7] Although the complaint also noted that the warrant application did not tie either Earl or Charlotte to Quarles's operation, the Cabbils concede both that Chalanda had a tie to Quarles and that Chalanda lived at the residence. Thus, it is unnecessary for Quarles to have a connection with all three residents. *See, e.g., United States v. Bradley*, 644 F.3d 1213, 1263 (11th Cir. 2011) (noting that probable cause to search a residence requires a nexus between the residence and purported criminal activity).

§ 1983 claims based on the search.

In addition to the search claims, Chalanda and Earl brought § 1983 claims based on their arrests. As with the search, they were both arrested pursuant to a warrant that was executed based on an affidavit sworn to by McKenzie. The same standard that applies to the search warrant applies to the arrest warrants. *See Holmes*, 321 F.3d at 1083 (noting that a police officer is liable under § 1983 for including false information in an application for an arrest warrant).

However, neither Chalanda nor Earl pleaded any facts regarding the content of the application for the arrest warrant or the arrest warrant itself. They did plead that a magistrate issued an arrest warrant, and an officer may generally rely on that warrant unless it clearly appears from the warrant application that there is no probable cause. *Malley*, 475 U.S. at 344–45, 106 S.Ct. at 1098. The complaint indicates that the residue was discovered in a common area near Earl's bedroom. However, both Earl and Chalanda lived at the residence. In such cases, there is often probable cause to arrest any residents of a home for contraband located in a common area. *See Ker v. California*, 374 U.S. 23, 36–37, 83 S. Ct. 1623, 1631 (1963). Either way, Chalanda and Earl failed to plead any facts to suggest that McKenzie omitted the location where the residue was found or that any omissions in his description were deliberate. *See United*

*States v. Astroff*, 578 F.2d 133, 135–36 (5th Cir. 1978) (finding that a misrepresentation was merely negligent when an officer indicated that he saw a substance appearing to be marijuana when he actually only smelled it).

Additionally, Chalanda and Earl attempt to claim that "[o]n information and belief, defendants planted the alleged cocaine residue *or* falsely claimed they had found cocaine that was not there." (Doc. 1 at 4–5 ¶ 25. (emphasis added).) This pleaded "fact" merely posits two separate theories that would undermine the existence of probable cause *only* if there were actual facts to support them. However, the complaint provides no facts to suggest a plausible basis to infer that *any* of the Defendants either planted cocaine residue *or* falsely claimed to find it. *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (refusing to accept as true an allegation that, upon information and belief, a state's supply of a lethal drug "is either expired, illegally obtained, or compounded pentobarbital").[8]

As with the search claim, Earl and Chalanda's arrest claim against the other Defendants is based on McKenzie's arrest warrant application. Since they have not alleged sufficient facts to suggest that the arrest warrant clearly lacked probable cause,

---

[8] The complaint also failed to identify the defendant or defendants responsible for purportedly planting the cocaine or making the false claim or include facts suggesting that all of the Defendants knew of the supposedly wrongful conduct.

the claims against the other officers must also fail. *See Messerschmidt*, 132 S.Ct. at 1244-45 (explaining that qualified immunity generally allows officers to rely on a warrant). Additionally, any conspiracy claim based on the arrest fails because Earl and Chalanda failed to plead sufficient facts to suggest that an actionable wrong occurred. *Hunt*, 891 F.2d at 1563.

The Defendants request that the dismissal be made with prejudice. Dismissals pursuant to Rule 12(b)(6) may be made with or without prejudice. *See Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1333 (11th Cir. 2012) (noting that the district court dismissed counts 1 and 2 with prejudice and count 3 without prejudice to give the plaintiffs an opportunity to amend). Indeed, the Court can exercise discretion over its docket when determining how to dismiss claims. *See Inman v. Am. Paramount Fin.*, 517 F. App'x 744, 748–50 (11th Cir. 2013) (explaining that the district court dismissed claims without prejudice before dismissing them with prejudice to allow the plaintiffs a chance to state a claim). The Defendants filed their motions to dismiss in September 2013, and at no time have the Cabbils requested leave to amend their complaint. It appears to the Court that further pleading would not rectify the significant defects in the complaint. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("[I]f the protections afforded public officials are not to ring hollow, plaintiffs cannot be allowed

to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold. Such a protracted process is likely to disrupt public officials from their duties as much as discovery itself."). Accordingly, the Court will grant the dismissals with prejudice.

## IV.   CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss (Docs. 6, 8) are due to be granted, and the claims are due to be dismissed with prejudice. A separate order consistent with this opinion will be entered.

Done this <u>19th</u> day of <u>May 2014</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256